Electronically Filed - Boone - April 27, 2020 - 01:50 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY**
**STATE OF MISSOURI**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **LEE ANN WRAY,** | ) | |
| | ) | |
| **Plaintiff.** | ) | |
| | ) | |
| **v.** | ) | **Case No:** |
| | ) | |
| **SMITCO EATERIES, INC.** | ) | |
| **d/b/a POPEYES LOUISIANA KITCHEN** | ) | |
| **Serve Registered Agent:** | ) | |
| **Secretary of State** | ) | |
| **600 West Main** | ) | |
| **Jefferson City, Missouri 65101** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PETITION FOR DAMAGES**

Plaintiff Lee Ann Wray, pursuant to Mo.Rev.Stat § 287.780 under the Workers'

Compensation Laws of the State of Missouri; the Family Medical Leave Act, 29 U.S.C. §§2601,

*et seq.* ("FMLA"); the Americans with Disabilities Act, as amended in 2008 ("ADA" /

"ADAAA"), 42 U.S.C. §12101 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§2000e *et seq.* ("Title VII"); and the Fair Labor Standards Act ("FLSA"), 29 USC §201 *et seq.*

brings the following Complaint against Defendant SmitCo Eateries, Inc. and alleges the

following:

**PARTIES**

1.      Plaintiff Lee Ann Wray (hereinafter referred to as "Plaintiff") is 49 years old and resided

most recently in Columbia, Missouri, until Defendant transferred Plaintiff in August 2019 from

**EXHIBIT A**

its Popeye's Louisiana Kitchen restaurant location in Columbia, Missouri to its Popeye's restaurant in Manhattan, Kansas.

2.      Defendant SmithCo Eateries, Inc. (hereinafter referred to as "Defendant") is an Arkansas corporation, with its principal place of business located in Fayetteville, Arkansas. Defendant owns and operates numerous restaurants in several states, including Missouri. The restaurants are commonly known as Popeye's Louisiana Kitchen ("Popeye's").

3.      Upon information and belief, Defendant's ability to conduct business in Missouri stands administratively closed or revoked under the provisions of Mo.Rev.Stat. § 351.486 and/or Mo.Rev.Stat. § 351.602. As such, pursuant to Mo.Rev.Stat § 351.602(4), the Missouri Secretary of State is Defendant's agent for service of process in any proceeding based on a cause of action which arose during the time the foreign corporation was authorized to transact business in this state. Service of process on the Missouri Secretary of State under § 351.602 is service on Defendant.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action because Plaintiff asserts claims under the workers' compensation laws of the State of Missouri, Mo.Rev.Stat. § 287.780, and because Missouri Circuit Courts are courts of general jurisdiction. Assertion of Plaintiff's claim under Mo.Rev.Stat. § 287.780 bars removal of this action under 28 U.S.C. § 1445(c) and under *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238, (8th Cir. 1995).

5.      Venue is proper in this Court because the acts, omissions and occurrences giving rise to Plaintiff's claims originated in Boone County, Missouri.

6.      On October 3, 2019, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon

disability, race association, and retaliation. A true and accurate copy of the Charge of Discrimination against Defendant is attached hereto as **Exhibit "A"**.

7.    The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial compliant may be and is a broad scope of the EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

8.    On or about January 30, 2020, the EEOC issued Plaintiff her Notice of Right to Sue pertaining to her complaint of discrimination on Charge Number 846-2019-29133.

9.    A true and accurate copy of Plaintiff's Notice of Right to Sue Letter dated January 30, 2020 is attached hereto as **Exhibit "B"**.

10.    Plaintiff has filed her lawsuit within 90 days of her receipt of her "Dismissal and Notice of Rights" letter from the EEOC.

11.    Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## STATEMENT OF FACTS

12.    Plaintiff hereby incorporated by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

13.    Plaintiff began her employment with Defendant in December 2014 as an Assistant Manager at its Popeye's restaurant located at 111 Business Loop 70E, Columbia, Missouri.

14.    Plaintiff was qualified for her employment. From the time Plaintiff began her employment in 2014 until her first work-related injury in July 2018, Defendant considered Plaintiff a valued team member who satisfactorily performed her job duties.

15.     On or about July 21, 2018, during the scope and course of her employment for
Defendant, Plaintiff sustained injury by accident to her left shoulder after sliding and falling on a
wet, greasy floor at Defendant's Popeye's restaurant at 111 Business Loop 70E, Columbia,
Missouri.

16.     After her injury, and after exercising her right to report such injury under the Missouri
Workers' Compensation Act, Defendant subjected Plaintiff to continuous discrimination because
she exercised her right to file a workers' compensation claim.

17.     In November 2018, Plaintiff began training to become the General Manager of the
Defendant's Popeye's location in Columbia, Missouri. The training consisted of learning the
"Monday morning paperwork", familiarizing herself with Defendant's policies and procedures,
and completing online training. During this transitional training period, Plaintiff notified
Defendant that she needed surgery on her injured left shoulder.

18.     On or about January 3, 2019, Plaintiff underwent surgery in an effort to repair the
damage to her left shoulder caused by her work-related injury.

19.     On or about January 14, 2019, Plaintiff discussed returning to work on light duty (per her
physician's order) with Defendant's General Manager at the Columbia Popeye's, Antonio Olive
("Olive"). Olive told Plaintiff he needed to consult with Tony Jaco ("Jaco"), Marc Rodriguez
("Rodriguez"), and Brian Smith ("Smith") about her returning to work with restrictions. Jaco
was Defendant's Operations Manager, Rodriguez was Defendant's CEO, and Smith was
Defendant's Owner.

20.     Olive was in a supervisory position over Plaintiff and, as such, was an agent of Defendant
Smitco Eateries with the authority to affect the working environment and conditions of Plaintiff.

21.     Jaco was in a supervisory position over Plaintiff and, as such, was an agent of Defendant Smitco Eateries with the authority to affect the working environment and conditions of Plaintiff.

22.     Rodriguez was in a supervisory position over Plaintiff and, as such, was an agent of Defendant Smitco Eateries with the authority to affect the working environment and conditions of Plaintiff.

23.     Smith was in a supervisory position over Plaintiff and, as such, was an agent of Defendant Smitco Eateries with the authority to affect the working environment and conditions of Plaintiff.

24.     Approximately three days later, on or about January 17, 2019, Olive told Plaintiff she could not return to work until she had a full release from her physician.

25.     Even with her physician's order for light duty, Plaintiff could have still processed paperwork as well as performed other parts of her job at Defendant's restaurant in Columbia, Missouri.

26.     On or about March 20, 2019, Plaintiff informed Olive her physician intended to give her a full return-to-work release no later than April 10, 2019.  In retaliation for exercising her rights under Missouri's workers' compensation laws, Olive responded to Plaintiff that Defendant could not wait for Plaintiff to obtain the full release from her physician, and that Defendant was instead giving the General Manager position of its Columbia restaurant to Sheila Dedrick ("Dedrick").

27.     On or about April 9, 2019, Plaintiff filed her Claim for Compensation with the Missouri Department of Labor and Industrial Relations-Division of Workers' Compensation for her work-related injury on July 21, 2018.

28.     Plaintiff returned to work at Defendant's Popeye's in Columbia, Missouri on April 10, 2019.

29.     Approximately two weeks after Plaintiff returned to work, Jaco transferred Plaintiff to Defendant's Popeye's location in Ponca City, Oklahoma to assist Defendant's General Manager in Ponca City with operating Defendant's restaurant.

30.     From approximately May 26, 2019 until June 2, 2019, Plaintiff successfully assisted Defendant's General Manager, Skyra Haze, with operating Defendant's Popeye's restaurant in Ponca City.  Plaintiff then returned to Defendant's restaurant in Columbia, Missouri.

31.     In July 2019, after her return to work at the Popeye's in Columbia, Missouri, Defendant again transferred Plaintiff.  This time, the transfer was to Defendant's Popeye's restaurant location in Topeka, Kansas.

32.     Defendant's Above Restaurant Leader (ARL) for its Kansas restaurants in 2019 was Sandy Coffman ("Coffman").

33.     Coffman was in a supervisory position over Plaintiff and, as such, was an agent of Defendant with the authority to affect the working environment and conditions of Plaintiff.

34.     In retaliation for exercising her rights under Missouri's workers compensation laws, Defendant did not promote Plaintiff to the General Manager position of its Columbia restaurant, and instead transferred Plaintiff multiple times from her home in Columbia, Missouri to out-of-state restaurants in an effort to make working conditions so intolerable so that Plaintiff would resign.

35.     Plaintiff again successfully operated Defendant's Popeye's restaurant in Topeka, and her work performance for Defendant was good.  Plaintiff's performance was such that Defendant's owner, Brian Smith, transferred Plaintiff to Defendant's Popeye's location in Manhattan, Kansas to work as that restaurant's General Manager.

36.     Defendant paid Plaintiff a salary of approximately $32,000 per year to work as the General Manager of its Popeye's restaurant in Manhattan, Kansas.

37.     Throughout her employment as General Manager at Defendant's Popeye's restaurant in Manhattan, Kansas, Plaintiff's job duties and responsibilities for Defendant were such that they did not qualify Defendant to pay Plaintiff as an "exempt" employee not subject to the overtime compensation provisions under the FLSA, and Plaintiff did not otherwise consent to any lawful arrangement under which she would or could be considered an exempt employee, or otherwise was not entitled to overtime compensation.  Upon information and belief, other employees working in the "General Manager" position for Defendant were also misclassified as "Exempt" employees.

38.     Plaintiff began her employment at Defendant's Manhattan restaurant on or about August 5, 2019.  At that time, the Defendant's store had numerous problems including, but not limited to, being understaffed, dirty, and having computers that did not function properly.  Less than a month after starting her employment at Defendant's restaurant in Manhattan, the store failed an evaluation.

39.     During and throughout her employment as General Manager at Defendant's restaurant in Manhattan, Kansas, Plaintiff actually and regularly worked more than 40 hours per payroll week.

40.     During Plaintiff's period of employment as General Manager of its Manhattan restaurant, Defendant failed and refused to pay Plaintiff overtime compensation at the rate of one-and-a-half times her regular rate of pay for all hours worked in excess of 40 hours per payroll week in one or more work weeks.

Electronically Filed - Boone - April 27, 2020 - 01:50 PM

41.     Upon information and belief, Defendant failed to maintain records of the number of hours Plaintiff actually worked during her period of employment as General Manager of its Manhattan restaurant, or any records kept by the Defendants were, and are, inaccurate.

42.     All the foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

43.     During Plaintiff's period of employment as General Manager of Defendant's Manhattan restaurant, Coffman was Plaintiff's direct supervisor.

44.     During Plaintiff's period of employment as General Manager of Defendant's Manhattan restaurant, Coffman made racially derogatory remarks, including calling one African-American male employee her "Batter Fry Bitch."  Plaintiff objected, and she told Coffman not to say that name.  Coffman ignored Plaintiff's complaint and continued her use of that name.

45.     After Coffman discovered Plaintiff's husband was African-American, she told Plaintiff, "Oh, you're married to a black man.  Is that why you are so ghetto?"

46.     In approximately mid/late August 2019, and after the corporate inspection, Coffman and Defendant retaliated against Plaintiff by refusing to give Plaintiff authorization to perform overnight cleaning at Defendant's Manhattan restaurant.  Instead, in further retaliation, Coffman and Defendant took pictures of the dirty restaurant in an effort to disparage Plaintiff, not because Defendant wanted the restaurant to improve.

47.     On or about September 10, 2019, during the scope and course of her employment for Defendant, Plaintiff sustained injury by accident to her head, neck, both shoulders, left hip, and body as a whole after slipping and falling in chicken grease at Defendant's Popeye's Manhattan restaurant.  Plaintiff immediately reported the accident to Coffman and Defendant, thereby

putting Defendant on notice that Plaintiff was likely to file a formal Missouri workers'
compensation claim.

48.    After her injury, and after exercising her right to report such injury under the Missouri
Workers' Compensation Act, Defendant subjected Plaintiff to additional continuous
discrimination because she exercised her right to file a workers' compensation claim.

49.    Plaintiff was unable to work on September 11th, 12th, and 13th because of her injuries.

50.    Plaintiff provided Defendant, through Coffman, her physician-ordered work restrictions
on September 11, 2019.

51.    At all times relevant hereto, Defendant was aware of Plaintiff's injuries and medical
condition.

52.    Plaintiff's work-related injuries required treatment by a health care provider.

53.    Defendant failed to advise Plaintiff that she could have been entitled to FMLA leave.

54.    Defendant failed to advise Plaintiff that she could have been entitled to leave under the
ADA/ADAA as a reasonable accommodation.

55.    Defendant failed to advise Plaintiff that leave of any type, including FLMA leave, was an
option for Plaintiff.

56.    Defendant interfered with Plaintiff's rights under the FMLA by failing to give her notice
of her right to FMLA leave.

57.    Defendant did not offer any additional time off to heal that Plaintiff may have been
entitled to under the ADA/ADAA and/or the Family Medical Leave Act, and she returned to
work on September 14, 2019.

58.    Coffman and Plaintiff worked together on September 15, 2019.  When Plaintiff reminded
Coffman of her restriction, and that she could not lift 50 pounds of chicken, Coffman told

Plaintiff, "that's not my problem." Later during their shift, Coffman told Plaintiff she "forgot" about her work restrictions.

59.    Defendant terminated Plaintiff's employment on September 17, 2019 after almost five (5) years of employment with Defendant, and only six (6) weeks into Plaintiff's arrival to work at Defendant's restaurant in Manhattan, Kansas.

60.    On or about October 4, 2019, Plaintiff filed her Claim for Compensation with the Missouri Department of Labor and Industrial Relations-Division of Workers' Compensation for her work-related injury that she suffered on September 10, 2019.

61.    Plaintiff's exercise of her rights under Missouri's workers compensation laws were motivating factors in Defendant's decision to fire Plaintiff.

62.    Defendant discriminated against Plaintiff, and terminated Plaintiff's employment, because of her interracial association with her African-American husband.

63.    Defendant discriminated against Plaintiff, retaliated against Plaintiff after her objections of racially derogatory name-calling, and terminated Plaintiff's employment because of her aiding and associating with her African-American co-worker who Coffman referred to as her "batter fry bitch".

64.    As a result of the aforesaid unlawful acts, Plaintiff has suffered loss of income, loss of fringe benefits, humiliation, embarrassment, and harm to her business reputation.

65.    Defendant acted intentionally, willfully, maliciously, and/or with reckless disregard of Plaintiff's rights.

66.    Plaintiff was the victim or discriminatory and retaliatory conduct on the part of Defendant that was a continuing pattern of discrimination and/or retaliation.

67.     Plaintiff suffers from physical impairments due to her work-related injuries, which substantially limits one or more of her major life activities, including, but not limited to: accomplishment of her daily routines of life and/or working.

## COUNT I
## MISSOURI WORKERS' COMPENSATION – RETALIATION

68.     Plaintiff hereby re-alleges all preceding paragraphs as though fully set herein, and further alleges that Defendant intentionally, willfully and maliciously retaliated against Plaintiff in altering the terms and conditions of her employment, and ultimately terminating Plaintiff's employment, because she exercised her right to workers' compensation benefits after suffering work-related injuries on July 21, 2018 and September 10, 2019, all in violation of Mo.Rev.Stat. §287.780.  Plaintiff's lawful right to exercise her rights under Mo.Rev.Stat.  §287.780 was a motivating factor, and contributed, in Defendant's decision to termination Plaintiff's employment.

WHEREFORE, Plaintiff prays that this Court order the following relief against the Defendant: (1) award Plaintiff compensatory and punitive damages; (2) award Plaintiff damages for pain and suffering; (3) award Plaintiff her costs and attorneys' fees; and (3) award such other relief as the Court may deem just and proper.

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA/ADAAA

69.     Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

70.    Plaintiff has disabilities, or is regarded as such, as defined by the Americans with

Disabilities Act, 42 U.S.C. 12101 et seq. ("ADA" / "ADAAA"), to wit:

    a.    Plaintiff suffered injury resulting in physical impairments after her September 10,

2019 work-related injury, which substantially limit one or more of her major life activities,

including, but not limited to, accomplishment of her daily routines of life and/or working;

    b.    a record of such physical impairments; or,

    c.    Defendant regarded Plaintiff as having such impairments.

71.    Plaintiff is a qualified individual with disabilities, or is regarded as such, as defined by

the Americans with Disabilities Act.  Plaintiff, with or without reasonable accommodation, was

able to perform the essential functions of her employment with Defendant.

72.    Following Plaintiff's return to work on September 14, 2019, and knowing of her medical

condition, Defendant did not discuss with Plaintiff whether she needed a reasonable

accommodation.

73.    Defendant engaged in said discriminatory practices with malice or reckless indifference

to the protected rights of Plaintiff.

74.    As a direct and proximate result of Defendant's violation of the ADA, as aforestated,

Plaintiff has suffered depression, emotional and physical distress, mental and physical anguish,

loss of reputation, humiliation and embarrassment, and will so in the future.

75.    As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff

has been placed in financial distress and has suffered a loss of earning and benefits, and will so

suffer in the future; she has been required to employ the services of an attorney to bring this

lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff respectfully prays that this Court find in favor of Plaintiff and against Defendant in the form of the order of this Court: (1) declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq., (2) award Plaintiff all lost wages, past and future, to which she is entitled, (3) award Plaintiff all compensatory, punitive, and exemplary damages, (4) award Plaintiff all expenses and attorneys' fees, with interest at the highest lawful rate, and (5) award any other relief as this Court deems just and proper.

<u>**COUNT III**</u>
<u>**DISCRIMINATION IN VIOLATION OF THE ADA/ADAAA**</u>
<u>**UNLAWFUL TERMINATION OF EMPLOYMENT**</u>

76.     Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

77.     Defendant subjected Plaintiff to disparate treatment, harassment, and/or termination, as set forth herein, in whole or in part because of her disabilities, or regarded her as such, after her work-related injury on September 10, 2019, said acts being made unlawful by the Americans with Disabilities Act, 42 U.S.C. 12101 et seq. ("ADA" / "ADAAA").

78.     Defendant violated the aforementioned ADA, inter alia, by subjecting Plaintiff to disparate treatment and harassment based on her disabilities or perceived disabilities, and/or her requests for accommodation, and then ultimately terminating Plaintiff's employment on September 17, 2019.

79.     Defendant engaged in said discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff.

13

80.     As a direct and proximate result of Defendant's violation of the ADA, as aforestated, Plaintiff has suffered depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so in the future.

81.     As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earning and benefits, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff respectfully prays that this Court find in favor of Plaintiff and against Defendant in the form of the order of this Court: (1) declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq., (2) award Plaintiff all lost wages, past and future, to which she is entitled, (3) award Plaintiff all compensatory, punitive, and exemplary damages, (4) award Plaintiff all expenses and attorneys' fees, with interest at the highest lawful rate, and (5) award any other relief as this Court deems just and proper.

### COUNT IV
### VIOLATION OF FAMILY MEDICAL LEAVE ACT

82.     Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

83.     The Family Medical Leave Act ("FMLA") makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right pursuant to the FMLA.

84.     Defendant is an "employer" as defined at 29 U.S.C. Section 2611(4)(A)(i).

85.     Plaintiff is a "person" as defined at 29 U.S.C. Section 2611(8).

86.     Plaintiff was an "eligible employee" as that phrase is defined by 29 U.S.C. Section 2611(2)(A)(i) and (ii).

87.     Plaintiff was entitled to benefits and leave under the FMLA after her work-related injury on September 10, 2019.

88.     Defendant was at all time material hereto engaged in "commerce" or was engaged in an "industry or activity affecting commerce," as that word and phrase are defined in 29 U.S.C. Section 2611(1) and at 29 U.S.C. Sections 142(1) and (3), as made applicable by 29 U.S.C. Section 2611(1).

89.     Defendant interfered with, restrained, and/or denied Plaintiff's exercise, or attempted exercise, of her rights under 29 U.S.C. Section 2601, et seq. in violation of 29 U.S.C. Section 2615(a).

90.     Defendant interfered with Plaintiff's rights under the FMLA by failing to give her notice of her right to FMLA leave.

91.     Defendant was on notice that Plaintiff had a serious medical condition.

92.     Plaintiff was entitled to FMLA protected leave with respect to any serious health conditions of her own in September 2019.

93.     Pursuant to 29 CFR 825.123, Plaintiff was entitled to receive notice of her FMLA rights and protection by the FMLA.

94.     Plaintiff's injuries that she sustained in her work-related accident on September 10, 2019 caused serious medical conditions that entitled Plaintiff to FMLA leave.

95.     Defendant failed to give Plaintiff notice of her FMLA rights.

96.     Defendant failed to give Plaintiff notice of her right to intermittent FMLA leave.

97.     Defendant interfered with Plaintiff's right to FMLA leave.

98.     Defendant did not provide Plaintiff job-protected leave.

99.     Defendant retaliated against Plaintiff for her exercise and attempted exercise of rights protected by the FMLA by never disclosing the use of FMLA as an option.

100.    Defendant ultimately terminated Plaintiff's employment in retaliation for attempting to take FMLA leave.

101.    Defendant violated Plaintiff's rights under the FMLA and willfully manipulated, interfered with, restrained and denied Plaintiff the exercise of rights provided by the FMLA and its implementing regulations.

102.    As a result of Defendant's conduct, Plaintiff has suffered emotional distress, humiliation and embarrassment.

103.    As a direct and proximate result of defendant's actions in violation of the FMLA, Plaintiff sustained damages in the form of salary and benefits.

104.    Plaintiff is entitled to all damages authorized by 29 U.S.C. Section 2617, including lost wages and benefits, interest, liquidated damages, attorneys' fees, and equitable relief.

        WHEREFORE, Plaintiff respectfully prays for judgement in her favor and against Defendant in the form of an order of this Court: (1) awarding her back pay in an amount yet to be determined; (2) awarding her front pay in an amount yet to be determined; (3) awarding her lost benefits in an amount yet to be determined; (4) awarding her liquidated damages in an amount yet to be determined; (5) awarding her costs and expenses, including, but not limited to, attorneys' fees and expert witness's fees, incurred in prosecuting her claims of discrimination; and (6) awarding such other and further relief as this Court deems just and proper.


## COUNT V
## ASSOCIATIONAL DISCRIMINATION BASED ON RACE

**IN VIOLATION OF TITLE VII**

105.    Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

106.    Defendant is an "employer" as defined by Title VII.

107.    Defendant subjected Plaintiff to disparate treatment, as set forth herein, in whole or in part because it knew of Plaintiff's association with an African-American, namely, her husband. Said acts being made unlawful by Title VII.

108.    Defendant violated Title VII by terminating Plaintiff's employment because she was associated with a person, her husband, whom Defendant knew was African-American.

109.    Defendant engaged in said discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff.

110.    As a direct and proximate result of Defendant's violation of Title VII, as aforestated, Plaintiff has suffered mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so in the future.

111.    As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earning and benefits, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff respectfully prays that this Court find in favor of Plaintiff and against Defendant in the form of the order of this Court: (1) declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Title VII, (2) award Plaintiff all lost wages, past and future, to which she is entitled, (3) award Plaintiff all compensatory, punitive, and exemplary damages, (4) award Plaintiff all expenses

17

and attorneys' fees, with interest at the highest lawful rate, and (5) award any other relief as this Court deems just and proper.

## COUNT VI
## UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII

112.   Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein.

113.   Defendant is an "employer" as defined by Title VII.

114.   Defendant subjected Plaintiff to unlawful retaliation, as set forth herein, in whole or in part because of Plaintiff's complaints of her employer referring to an African-American employee as a "batter fry bitch", said act being made unlawful by Title VII and because she objected to being referred to as "ghetto" by her supervisor, Coffman.

115.   Defendant violated Title VII by terminating Plaintiff's employment because she aided, and was associated with, her co-worker, whom Defendant knew was African-American and because she was associated with her husband, an African-American.

116.   Defendant engaged in said discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff.

117.   As a direct and proximate result of Defendant's violation of Title VII, as aforestated, Plaintiff has suffered mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so in the future.

118.   As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earning and benefits, and will so

suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff respectfully prays that this Court find in favor of Plaintiff and against Defendant in the form of the order of this Court: (1) declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Title VII, (2) award Plaintiff all lost wages, past and future, to which she is entitled, (3) award Plaintiff all compensatory, punitive, and exemplary damages, (4) award Plaintiff all expenses and attorneys' fees, with interest at the highest lawful rate, and (5) award any other relief as this Court deems just and proper.

**COUNT VII**
**UNPAID OVERTIME UNDER THE FLSA**

119.    Plaintiff hereby incorporates by reference each and every allegation and averment in the preceding and foregoing paragraphs as though fully set forth herein, and further states that Defendant willfully misclassified Plaintiff as an "Exempt" employee at its Popeye's restaurant in Manhattan, Kansas and failed to pay Plaintiff at a rate at least one and one-half times Plaintiff's regular rate of pay for hours worked in excess of forty hours per week in one or more work weeks, in violation of 29 USC §201 et seq., as amended and applicable regulations thereunder, and failed to pay such overtime pay with reckless disregard to federal law regarding overtime pay.

WHEREFORE, Plaintiff respectfully prays for judgement in her favor and against Defendant in the form of an order of this Court:  (1) Award compensatory damages; (2) Award liquidated damages; (3) Award attorneys' fees and costs, as provided by law; (4) Award pre-

judgment and post-judgment interest as provided by law; and (5) Such other relief as the Court

deems fair and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Respectfully Submitted,

/s Daniel J. Voss
Daniel J. Voss, Attorney at Law
MO Bar #49246
4723 Terrace Street
Kansas City, Missouri 64112
TEL: (816) 522-3536
dan@danvosslaw.com
**ATTORNEY FOR PLAINTIFF**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA<br>☒ EEOC | 846-2019-29133 |

| Missouri Commission on Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Lee Ann Wray | ▬▬▬▬▬ |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| ▬▬▬▬ | ▬▬▬▬▬▬ | ▬▬▬▬ |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| SmitCo Eateries, Inc. d/b/a<br>Popeyes Louisiana Kitchen | >15 | (785) 320-5030 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1115 Bluemont Ave. | Manhattan, Kansas 66502 | Riley (KS) |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ AGE

☒ RETALIATION   ☐ NATIONAL ORIGIN   ☒ DISABILITY   ☐ PREGNANCY

| DATE DISCRIMINATION TOOK PLACE *EARLIEST (ADEA/EPA)*   *LATEST (ALL)* |
|---|
| August 5, 2019     September 17, 2019 |
| ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

See attached.

*[stamp: 2019 OCT -3 AM 10:13 RECEIVED EEOC KANSAS CITY AREA OFFICE]*

| ☒☒ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

| I declare under penalty of perjury that the foregoing is true and correct.<br><br>*Lee Ann Wray* | SIGNATURE OF COMPLAINANT<br><br>*Lee Ann Wray* |
|---|---|
| Date /10-2-2019   Charging Party *(Signature)*   (Wray) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(Day, month, and year)* |

EXHIBIT A
tabbies®

I am a Caucasian female. I started working for SmitCo Eateries in Columbia, Missouri in December 2014 as an Assistant Manager at its Popeyes restaurant.

In June 2019, I was transferred to the Popeyes restaurant in Tonca City, Oklahoma to help the general manager at that store. I was there for a brief time and successfully helped that restaurant. After assisting at that location, I returned to the Popeyes in Columbia, Missouri. Then in July 2019, I was transferred to the Popeyes restaurant in Topeka, Kansas to help there. I successfully assisted the store in Topeka until SmitCo's owner, Brian Smith, asked me to permanently relocate from Columbia, Missouri to Manhattan, Kansas to work as the general manager of its Popeyes location in Manhattan, Kansas.

I began my position in Manhattan on August 5, 2019. My immediate supervisor there was Above Restaurant Leader (ARL) Sandy Coffman ("Coffman"). During my employment there, Coffman made racially derogatory remarks. She referred to one African-American male employee, Michael Williams, as her "Batter Fry Bitch". I told her not to use that name when talking about him but she continued to use that term. When Coffman discovered my husband was African-American, she asked me "Oh, you're married to a black man. Is that why you are so ghetto". On September 10, 2019, I suffered work-related injuries to my shoulders and also hurt my hip, back, and head after slipping and falling in chicken grease. I was unable to work on September 11th, 12th, and 13th but went into the restaurant on September 11th to give Coffman my physician ordered restrictions.

Coffman and I worked together on September 15th and when I reminded her of my restrictions, and that I could not lift 50 pounds of chicken, she told me "that's not [her] problem". I was also never offered any benefits until the Family Medical Leave Act. On September 17th, Coffman fired me for problems with my "professionalism and integrity" but she gave me no specifics.

I was fired because of my injuries/perceived disabilities and for complaining about race discrimination, and I believe this is a violation of laws including, but not limited to, Title VII, the Family Medical Leave Act, and the Americans with Disabilities Act.

Electronically Filed - Boone - April 27, 2020 - 01:50 PM

EEOC Form 161-B (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Lee A. Wray | From: | Kansas City Area Office |
|---|---|---|
| | | Gateway Tower II |
| | | 400 State Avenue, Suite 905 |
| | | Kansas City, KS 66101 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Anne Powell, | |
| 846-2019-29133 | Investigator | (913) 551-5849 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

JAN 3 0 2020

Enclosures(s)

**Natascha DeGuire,**
**Area Office Director**

*(Date Mailed)*

cc:
Spencer F. Robinson
Ramsay Bridgforth Law Firm
P.O. Box 8509
Pine Bluff, AR 71611

Daniel J. Voss
Attorey at Law
4723 Terrace Street
Kansas City, MO 64112

**EXHIBIT**

**B**